UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ANTONIO SALAS, JR.<br><br>Defendant. | No. 1:11-cr-00354-JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(2)<br><br>(Doc. 817) |

Before the Court is Defendant Richard Salas's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) ("§ 3582"), in accordance with the United States Sentencing Guidelines ("USSG") § 1B1.10(b)(1) and Amendment 782 to the USSG.  (Doc. 817.)  The government opposed this motion, (Doc. 825), and Defendant filed a reply.  (Doc. 826.)  At the Court's request, the government submitted additional information, (Doc. 849), to which Defendant objects as improper.  (Doc. 850.)

**BACKGROUND**

On February 1, 2012, Defendant Salas was indicted and charged by second superseding indictment with conspiring to distribute methamphetamine (Count One) and approximately 34 counts of distribution and possession of methamphetamine with intent to distribute.  (Doc 12.)  On January 1, 2014, Salas pleaded guilty to Count One of the second superseding indictment.  (Doc. 447.)  The factual basis for Salas's plea, included in the plea agreement, established that

Salas was a member of the Kings County regiment of the Nuestra Familia prison gang and served as the security crew boss from December 2009 through June 2010. (*Id*. at 6.) Salas was in charge of other regiment members and associates who obtained and distributed methamphetamine and other controlled substances. In this role, Salas obtained and transferred drugs to others and collected drug proceeds and Nuestra Familia membership dues. Salas operated outside of the prison structure, working with other Nuestra Familia members on the streets to distribute drugs. During the time period described above, Salas agreed to distribute methamphetamine and provide some of his profits to the upper levels of Nuestra Familia, which would then be used to purchase additional methamphetamine and other controlled substances.

In Salas's plea agreement, he confirmed that "the amount of a mixture of methamphetamine involved" in his transactions was "no less than 15.9 kilograms which falls within an offense level of 38," and that "the amount of actual methamphetamine also falls into an offense level of 38."[1] (Doc. 447 at 3–4.) Salas agreed that he was engaged in transactions involving the following amounts of methamphetamine:

- January 10, 2010 – 13.5 grams of a mixture containing 11.6 grams of actual methamphetamine;
- February 1, 2010 – 27.8 grams of a mixture containing 26.9 grams of actual methamphetamine;
- February 5, 2010 – 27.7 grams of a mixture containing 27.3 grams of actual methamphetamine;
- March 10, 2010 – 26.8 grams of a mixture containing 28.1 grams of actual methamphetamine;
- March 17, 2010 – 27.6 grams of a mixture containing 26.7 grams of actual methamphetamine;
- April 19, 2010 – 85 grams of methamphetamine;
- April 23, 2010 – 222.6 grams of a mixture containing 221.4 grams of actual

---

[1] As defined in the USSG and discussed in Salas's reply brief, the term "methamphetamine" refers to "any mixture of substance containing a detectable amount" of methamphetamine. Mention of "actual" or "ice" methamphetamine refers to the weight of the controlled substance itself contained within a mixture. USSG §2D1.1, n.(A).

1           methamphetamine; and

2       - June 8, 2010 – 33.8 grams of "ice" methamphetamine.  (*Id*. at 6.)

3       Salas was additionally aware that Nuestra Familia would be receiving several shipments
4  of methamphetamine mixture:  6.80kg on April 1, 2010, 4.54kg on May 7, 2010, and a 9.07kg on
5  June 2, 2010, for a total of 20.41kg.  (*Id*.)  These deliveries would provide the methamphetamine
6  that Salas was responsible for distributing or overseeing the distribution of.  The money obtained
7  from the sale of that methamphetamine would then be used to obtain additional quantities of
8  methamphetamine.  (*Id*. at 6–7.)   With respect to the June 2, 2010 shipment, the plea agreement
9  notes that Salas intended to possess an unspecified portion of the 9.07kg for distribution by
10  Nuestra Familia—not the entire 9.07kg.  (*Id*. at 7.)

11       The Presentence Investigation Report ("PSR") relied on this information to conclude that
12  Salas's criminal offense level was 38 with a criminal history category of I, making his guideline
13  range 235 to 293 months.  (Doc. 513 at 4.)[2]  The sentencing court adopted that conclusion and
14  sentenced Salas to 240 months.  (Doc. 528.)  Seven months after Salas was sentenced, on
15  November 1, 2014, the Sentencing Commission promulgated Amendment 782, which generally
16  revised the Drug Quantity Table and chemical quantity tables across drug and chemical types.
17  *See* Amendment 782.  The Commission voted to make Amendment 782 retroactively applicable
18  to previously sentenced defendants. *See* USSG, sup. App'x C, amend. 788 (2014); *United States*
19  *v. Navarro*, 800 F.3d 1104, 1107 (9th Cir. 2015).  The amendment increased the amount of
20  methamphetamine necessary to result in an offense level 38, from 1.5 kilograms of actual
21  methamphetamine (or 15 kilograms of a mixture containing methamphetamine) to 4.5 kilograms
22  of actual methamphetamine (or 45 kilograms of a mixture containing methamphetamine).  Salas
23  now moves the Court for a sentence reduction based on Amendment 782.

## LEGAL STANDARD

25       "A federal court generally 'may not modify a term of imprisonment once it has been
26  imposed.'"  *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)).

---

[2]  Salas received a 3-point increase in his criminal offense level for his high-level role in the offense, which was offset by a 3-point reduction for his acceptance of responsibility.

1    However, a federal sentencing court is authorized to modify an imposed sentence when the
2    relevant sentencing range was lowered subsequent to a defendant's original sentence. 18 U.S.C.
3    § 3582(c)(2); *see United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013) (a district court may
4    modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment
5    based on a sentencing range that has subsequently been lowered by the Sentencing
6    Commission."). The Supreme Court has emphasized that § 3582(c)(2) permits "only a limited
7    adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*,
8    560 U.S. at 826.

9    Determining whether a sentence reduction is appropriate under § 3582(c)(2) "requires a
10   two-step inquiry." *Dunn*, 728 F.3d at 1155. First, a district court must determine whether a
11   retroactive amendment would result in a lower guidelines range. *United States v. Mercado-*
12   *Moreno*, 869 F.3d 942, 948–49 (9th Cir. 2017). If so, the court must determine whether the
13   authorized reduction is warranted, either in whole or in part, after considering the factors set forth
14   in 18 U.S.C. § 3553(a) and the particular circumstances of the case. *Id*.; *see also Dunn*, 728 F.3d
15   at 1155; *Dillon*, 560 U.S. at 826–27.

16   To determine whether the retroactive amendment would result in a lower guidelines range,
17   it is necessary to apply the drug quantity attributable to the defendant to the quantities applicable
18   in the amended guidelines. *Mercado-Moreno*, 869 F.3d at 957. If the sentencing court made a
19   specific finding regarding the total quantity of drugs for which the defendant was responsible, or
20   if the defendant admitted to a specific total quantity, the court considering a sentence reduction is
21   bound by the previously determined drug quantity. *Id*. If the court is not bound by such a prior
22   determination because the drug quantity finding at the original sentencing is ambiguous or
23   incomplete, it may make supplemental findings of drug quantity. Supplemental findings may not
24   be inconsistent with any factual determinations made by the original sentencing court. *Id*.

25                                              **ANALYSIS**
26   **A.    Qualification for Reduced Offense Level under Amended Guidelines**
27   The parties disagree about whether Salas qualifies for a reduced offense level under the
28   amended guidelines. Salas argues that he admitted to a specific quantity of drugs in his plea

4

agreement that is binding on this Court. (Doc. 817 at 2). The specific amounts disclosed in the plea agreement would amount to approximately 20.5 kilograms of methamphetamine mixture,[3] .342 kilograms of actual methamphetamine, and .034 kilograms of "ice" methamphetamine—an amount that, under the amended guidelines, would qualify Salas for an offense level of 36. The government argues that Salas did not admit to a specific quantity of drugs and provides the Court with additional information for supplemental findings. (Doc. 825 at 6.) Specifically, the government provides test results purporting to show that the amount of actual methamphetamine present in the April, May, and June shipments to Nuestra Familia exceeds 4.5 kilograms of actual methamphetamine such that Salas's criminal offense level would remain 38 even under the amended guidelines. (Doc. 825 at 6.)

The Court recognizes that though Salas took responsibility for the specific transactions recounted in the plea agreement, each of which was paired with a specific drug amount, the language of the plea left open the possibility that Salas may be responsible for *more* methamphetamine than initially described. Salas formally admitted to "no less than" 15.9 kilograms of methamphetamine mixture and at least enough actual methamphetamine to place him in an offense level 38, and his agreement regarding specific transactions contained the caveat that "as to other facts, the parties may disagree." (Doc. 447 at 3–4, 6.) If, as the government contends, the listed drug shipments contained at least 4.5kg of *actual* methamphetamine, Salas would not be eligible for a lower sentencing range.

However, in making any supplemental finding about the purity of the methamphetamine shipments, the Court may only consider information that was available at the time of sentencing, such as a "trial transcript, the sentencing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted." *Mercado-Moreno*, 869 F.3d at 957; *see also United States v. Acosta*, No. 1:04-CR-05278-DAD, 2016 WL 8678046, at *4 (E.D. Cal. Dec. 30, 2016) (citing cases and holding that "when a defendant seeks a reduction in sentence under § 3582(c)(2) based upon Amendment 782 to the USSG, only the evidence and information

---

[3] This estimate assumes without deciding that all of the methamphetamine mixture from the April, May, and June shipments would be properly attributable to Salas.

5

1  before the court, as well as the findings made, at the time of the original sentencing may be
2  considered.") In *Acosta*, as here, the government sought to introduce evidence regarding the
3  purity of a methamphetamine mixture that had been seized in connection with the defendant's
4  conspiracy. The court declined to consider this evidence because it had not been presented at the
5  time of the defendant's sentencing. *Acosta*, 2016 WL 8678046 at *6.

6  The test results provided by the government in opposition to Salas's motion were not
7  available to the sentencing court. In light of this, the Court provided the government an
8  opportunity to identify information that *was* before the sentencing court which may form the basis
9  for supplemental findings as to the drug quantity attributable to Salas. The government's
10 subsequent filing did not, as requested, shed light on relevant information available to the
11 sentencing court; instead, it merely encouraged this Court to consider the new drug purity
12 evidence. (Doc. 849.) As discussed above, the Court will not consider evidence that was not
13 before the sentencing court for the purposes of the pending motion. *See Acosta*, 2016 WL
14 8678046 at *8.

15 Relying only on information available to the sentencing court, there is insufficient
16 evidence in record from which to conclude that, by a preponderance of the evidence, Salas's
17 offense involved at least 4.5 kilograms of actual methamphetamine or 45 kilograms of
18 methamphetamine mixture. As noted, the PSR describes several multi-kilogram shipments of
19 methamphetamine mixture connected to Salas's drug activity, but there is no information in the
20 PSR as to the purity level of these shipments, and the weight of the mixtures does not exceed 44
21 kilograms. The evidence available to the sentencing Court therefore supports Salas's eligibility
22 for a reduced criminal offense level of 36.

23 **B.     § 3553(a) Factors**

24 Having determined that Salas qualifies for a sentencing reduction, the Court must now
25 consider the applicable § 3553(a) factors to determine whether the reduction authorized by the
26 sentencing guidelines is warranted in whole or in part under the particular circumstances of the
27 case. *Dunn*, 728 F.3d at 1155. The § 3553(a) factors include: "the nature and circumstances of
28 the offense and the history and characteristics of the defendant; the purposes of sentencing; the

1  kinds of sentences available; the sentences and ranges established by the Guidelines; relevant
2  policy statements issued by the Sentencing Commission; the need to avoid unwarranted
3  sentencing disparities among similarly situated defendants; and the need to provide restitution to
4  victims." *Id*. at 1158 (internal quotation marks and citation omitted).

5  With his criminal offense level reduced to 36 and a criminal history category of I, the
6  guidelines for Salas's sentence would be 188–235 months.  Salas asks that the Court adopt a
7  sentence at the low end of these guidelines, which would be a 52-month reduction from his
8  current 240-month sentence. (Doc. 817 at 4.)  If his sentenced were so reduced, Salas's sentence
9  would still amount to more than 15 years.  The government provided no opposition to a sentence
10 reduction on § 3553 grounds.

11 The Court has considered the § 3553(a) factors and finds that a sentence reduction is
12 warranted.  A sentence within the current guidelines for an offense level of 36 would still amount
13 to more than 15 years, which reflects the seriousness of the offense and provides just punishment.
14 Salas notes that he has incurred no disciplinary infractions and has walked away from gang life
15 since he began his term of incarceration in June 2010.  (*Id*.)  He has additionally obtained his
16 GED, participated in programming available to him, and requested to participate in a 500-hour
17 drug treatment program.  (*Id*. at Ex. A.)  Pursuant to the plea agreement, the sentencing court
18 considered the guideline range for Salas's offense and ultimately sentenced Salas to five months'
19 more than the low end of the range.  The Court finds the same approach appropriate here and
20 thereby reduces Salas's sentence to five months' more than the low-end of the new guidelines
21 range for a total of 193 months.

## CONCLUSION

23 For the reasons explained above:

24 1. Defendant Salas's motion brought pursuant to 18 U.S.C. § 3582(c)(2) (Doc. No. 817)
25    is **GRANTED**.
26 2. The term of imprisonment imposed on April 23, 2014 is reduced to a term of 193
27    months.
28 3. All other terms and provisions of the original judgment remain in effect.  The Clerk of

the Court is directed to prepare an AO247 form reflecting this reduction in sentence and to serve certified copies of that AO247 on the United States Bureau of Prisons and the United States Probation Office.

4. Unless otherwise ordered, Defendant Salas shall report to the United States Probation Office within 72 hours after his release from the custody of the Bureau of Prisons; and

5. The Clerk of Court is directed to close this case as to Defendant Salas.

IT IS SO ORDERED.

Dated:   **July 15, 2022**

_Jennifer L. Thurston_
UNITED STATES DISTRICT JUDGE